**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **CHRISTINA BAUER**, *individually and on behalf of a class of similarly situated persons,* <br> *Plaintiff,* <br> v. <br> **KIND, LLC *and* MARS, INCORPORATED,** <br> *Defendants.* | Case No.: 8:26-cv-2622 <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

**COMES NOW** the Plaintiff, **CHRISTINA BAUER** ("Plaintiff" or "Ms. Bauer"), individually and on behalf of all others similarly situated, by and through the undersigned counsel, and complains of the Defendants, **KIND, LLC** ("KIND") and **MARS, INCORPORATED** ("Mars"), (jointly, the "Defendants"), stating as follows:

## DESCRIPTION OF THE CASE

1. Defendants formulate, label, market, distribute, and sell the KIND® Zero G Added Sugar line of snack bars (hereafter referred to each as a "Product" and together as the "Products").

2. Plaintiff brings this action on behalf of herself and a Class of similarly situated consumers who purchased any of the Products, which include, without

limitation, all flavors, editions, and pack configurations of KIND® Zero G Added Sugar added nut bars, including the following flavors:

a. Dark Chocolate Nuts & Sea Salt;

b. Caramel Almond & Sea Salt;

c. Peanut Butter Dark Chocolate; and

d. Raspberry Vanilla Cashew.

3. Throughout this Complaint, Plaintiff uses the KIND® Zero G Added Sugar nut bar in the flavor, Dark Chocolate Nuts & Sea Salt (the "Representative Product") as a representative example. The Representative Product is illustrative of Defendants' uniform "Zero G Added Sugar" representation and is not the only Product at issue. As alleged below, the "Zero G Added Sugar" representation, and the allulose sugar ingredient that contradicts it, are common to all of the Products regardless of flavor or pack size.

4. Defendants sold, or otherwise provided, the Products to Publix, Walmart, Target, Amazon, and other retailers for resale to Florida and nationwide consumers.

5. Defendants thereby engaged in "trade or commerce" as defined by § 501.203(8), Fla. Stat.

6. Defendants prominently and conspicuously market and sell the Products as bearing "Zero G Added Sugar" (the "Representation") on the front of the Products' packaging and in their online listings.

7. The Representation is a material claim about the basic nature and composition of the Products. It is an express, objective, and quantitative claim about a measurable physical attribute of the Products, namely that no sugar was added to the Products during processing.

8. By labeling and advertising the Products as "Zero G Added Sugar", Defendants represent to reasonable consumers, including Plaintiff, that no sugar or sugar-containing ingredient was added to the Products during manufacturing.

9. That representation is false. Every flavor identified in Paragraph 2 lists allulose as the second or third ingredient on its ingredient statement, by weight, the second-most or third-most predominant ingredient in the Product. Allulose is a monosaccharide and therefore a sugar under the federal and Florida labeling standards described below. It is added to the Products during processing; it is not a naturally occurring constituent of the Products' other ingredients in the gram-scale quantities present.

10. Because allulose is a sugar-containing ingredient added to the Products during processing, the Products do not qualify for a "no added sugar," "without added sugar," "Zero G Added Sugar," or "no sugar added" claim under federal law. *See* 21 C.F.R. § 101.60(c)(2)(i).

11. Moreover, each Product's Nutrition Facts panel declares "Includes 0g Added Sugars," a declaration that fails to account for the several grams of allulose Defendants added during processing. See 21 C.F.R. § 101.9(c)(6)(iii). The

representation is therefore false, and the Products are misbranded under Florida's Food Safety Act, which adopts these federal labeling requirements as state law.

12. Reasonable consumers, including Plaintiff, purchased the Products on the reasonable but mistaken belief that no sugar had been added to them.

13. Defendants' conduct violates Florida's Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat., *et seq.* ("FDUTPA"); Florida's prohibition against false and misleading advertising, § 817.41, Fla. Stat.; and is otherwise grounds for restitution based on quasi-contract / unjust enrichment.

14. Plaintiff seeks damages, injunctive and declaratory relief, restitution, attorneys' fees and costs, and a jury trial.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Kind is a Delaware limited liability company with its principal place of business in New York, New York, Mars is a Delaware corporation with its principal place of business in McLean, Virginia, and Plaintiff is domiciled in Florida. The amount in controversy exceeds $5,000,000 for Plaintiff and the putative Classes, exclusive of interest and costs, reaped by Defendants from their transactions with Plaintiff and the putative Classes, as a direct and proximate result of the wrongful conduct alleged herein and by the injunctive and equitable relief sought.

16. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims

occurred within Hillsborough County, Florida, which lies in this District and Division, where Plaintiff saw the Representation and purchased and received the Product.

**PARTIES**

17. Plaintiff, Ms. Bauer, is an adult individual and a citizen of the State of Florida, residing in Tampa, Hillsborough County, Florida.

18. Plaintiff maintains her permanent residence in Hillsborough County, Florida, and is thus domiciled in Hillsborough County, Florida.

19. Plaintiff is a "consumer" as defined by § 501.203(7), Fla. Stat.

20. Plaintiff regularly purchased the Representative Product for her personal use, in Florida, from the retailer Walmart.

21. Defendant, KIND, is a Delaware limited liability company and its principal place of business is 3 Times Square, 12th Floor, New York, New York 10036.

22. KIND's New York registered agent is Corporation Service Company, 80 State Street, Albany, NY 12207.

23. Defendant, Mars, is a Delaware corporation with a principal business address of 6885 Elm Street, McLean, VA 22101.

24. Mars' Virginia registered agent is CT Corporation System, 4701 Cox Rd., Suite 285, Glen Allen, VA 23060.

25. Mars is the parent company of KIND.

26. On information and belief, as the parent company, Mars directed, approved, or participated in the labeling and marketing decisions for the Products.

27. Defendants formulate, manufacture, market, label, distribute, and sell the KIND® nut bar products, including the Products at issue in this action, throughout Florida and the United States. Defendants are thus responsible for the content of the Products' labels, packaging, and advertising.

## FACTUAL ALLEGATIONS

### Sugar Content Is Material to Consumers' Purchasing Decisions

28. Whether a product contains sugar is a decisive purchasing factor for a large share of American consumers. In the International Food Information Council's 2025 Food & Health Survey, three in four Americans reported that they were trying to limit or avoid sugar in their diets, and more than six in ten said they were concerned about the amount of sugar they consume.[1] For these consumers, sugar is not a neutral attribute rather it is the thing they are shopping to avoid.

29. Public-health guidance reinforces that concern. The federal government's own nutrition policy reflects this concern: the 2025–2030 Dietary Guidelines for Americans state that "no amount of added sugars . . . is recommended or considered part of a healthy or nutritious diet."[2] The World Health Organization strongly recommends adults to hold free sugars below ten percent of total daily energy intake,

---

[1] Int'l Food Info. Council, 2025 Food & Health Survey 67, 75 (Jan. 13, 2026), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (last accessed September 3, 2026).

[2] U.S. Dep't of Health & Human Servs. & U.S. Dep't of Agric., Dietary Guidelines for Americans, 2025–2030 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf (last accessed September 3, 2026).

and to aim for five percent or less.[3] The American Heart Association sets a tighter ceiling still, recommending that added sugars be kept below six percent of daily calories.[4] Consumers who follow this guidance treat a product's sugar content as dispositive.

30. Consumers act on that concern at the shelf. Three in four Americans are trying to limit or avoid sugars in their diets.[5] Among Americans who report trying to limit or avoid sugar, more than one in four (27%) buy products labeled “sugar free” when available.[6] For a substantial segment of shoppers, then, a front-of-package “Zero G Added Sugar” claim is not incidental marketing. It is the specific cue they look for and the basis on which they decide what products to purchase.

31. That demand supports a large and fast-growing market. One industry analyst valued the global sugar-free food market at roughly $45.3 billion in 2024 and approximately $48.1 billion in 2025, and projects it to approach $83.2 billion by 2034 — annual growth exceeding six percent, driven by consumers shifting toward products they perceive as healthier.[7]

---

[3] World Health Org., Guideline: Sugars Intake for Adults and Children (2015), https://iris.who.int/server/api/core/bitstreams/4be74f01-de93-4596-bbd1-02a97afb1221/content (last accessed September 3, 2026).

[4] Am. Heart Ass'n, Added Sugars (Aug. 2, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars (last accessed September 3, 2026).

[5] Int'l Food Info. Council, 2025 Food & Health Survey 67, 75 (Jan. 13, 2026), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (last accessed September 3, 2026).

[6] *See Id*.

[7] Precedence Research, Sugar-Free Food Market Worth USD 83.20 Billion by 2034, Reflecting a Shift Toward Healthier Lifestyles, Yahoo Fin. (Oct. 10, 2025) (paid press release), https://finance.yahoo.com/news/sugar-free-food-market-worth-141000442.html (Last accessed September 3, 2026).

32. Manufacturers understand this demand and price to it. A "Zero G Added Sugar" claim allows a product to command a premium over comparable products that carry no such claim, and manufacturers accordingly place these claims on the front of the package, where they are most likely to convert a shopper into a buyer.

33. Sugar content is therefore material. A reasonable consumer treats a "Zero G Added Sugar" representation as a genuine reason to select one product over another and to pay more for it and, being unable to test a product's chemistry in the aisle, takes the representation at face value and relies on it. Defendants built the Products' packaging and advertising around that reliance, placing the "Zero G Added Sugar" claim front and center to capture both the price premium and the health-conscious buyers those claims attract even though, as set forth below, the Products are sweetened with a sugar added during processing.

34. Defendants have capitalized on that demand. They market Products sweetened with allulose, a sugar, while labeling and advertising them as "Zero G Added Sugar." Defendants thereby obtained an unfair advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**<u>Defendants' "Sugar-Free" Representations</u>**

35. As alleged above, Ms. Bauer purchased the KIND® Zero G Added Sugar Dark Chocolate Nuts & Sea Salt bars in a pack of five 1.2oz bars via curbside pickup at Walmart on September 2, 2026.

36. Defendants prominently state on the front of the Representative Product's label that it has "ZERO G ADDED SUGAR," displayed directly below the

KIND® logo, together with the statement "1g TOTAL SUGAR| NO ARTIFICIAL SWEETENERS," as seen below:




37. The Representative Product's ingredient statement lists allulose as the second ingredient, immediately after almonds and peanuts: "INGREDIENTS: Almonds, peanuts, allulose, tapioca fiber, palm kernel oil, brown rice, chicory root fiber, alkalized cocoa, unsweetened chocolate, sea salt, peanut butter (peanuts, sea salt), natural flavor, soy lecithin."

38. Under federal labeling law, ingredients are listed in descending order of predominance by weight. *See* 21 C.F.R. § 101.4(a)(1). Allulose is therefore among the Product's most predominant ingredients by weight, more predominant than the chocolate, cocoa, or peanut butter for which the Product is named, as seen below:




39. Defendants carried the same Representation onto the Walmart.com listing from which Ms. Bauer purchased. The listing is titled "KIND Zero G Added Sugar Bars, Keto Friendly Snacks, Dark Chocolate Nuts and Sea Salt, 6.2oz Box (5 Bars)." The representation "ZERO Added Sugar" thus also appears in the Product's name at the top of the listing, as seen below:



40. The same pattern — the "Zero G Added Sugar" Representation on the front label, allulose as the second-listed ingredient, and an "Includes 0g Added Sugars" declaration on the Nutrition Facts panel — appears on each of the other Products identified in Paragraph 2:

a. **The Caramel Almond & Sea Salt** bar's ingredient statement begins: "Almonds, allulose, tapioca fiber, chicory root fiber, palm kernel oil, brown rice, milk powder, natural flavor, sea salt, soy lecithin, cocoa, annatto extract," and its Nutrition Facts panel likewise declares "Includes 0g Added Sugars."

b. **The Peanut Butter Dark Chocolate** bar's ingredient statement begins: "Peanuts, allulose, tapioca fiber, almonds, palm kernel oil, brown rice, chicory root fiber, peanut butter (peanuts, sea salt), alkalized cocoa, unsweetened chocolate, sea salt, natural flavor, soy lecithin," and its Nutrition Facts panel likewise declares "Includes 0g Added Sugars."

c. **The Raspberry Vanilla Cashew** bar's ingredient statement begins: "Cashews, almonds, allulose, tapioca fiber, brown rice flour, dried raspberries, monk fruit concentrate syrup, sea salt, soy lecithin, citric acid, madagascar vanilla bean powder, natural flavor," and its Nutrition Facts panel likewise declares "Includes 0g Added Sugars."

41. In each Product, allulose is added during processing to function as a bulk sweetener; it is not a naturally occurring constituent of almonds, peanuts, cashews, cocoa, or the Products' other ingredients in the gram-scale quantities present. Defendants added allulose to sweeten the Products while marketing them as having "Zero G Added Sugar."

42. The Representative Product's label identifies KIND as the entity responsible for the Product, stating: "Brought to you by KIND LLC, P.O. BOX 705 Midtown Station, NY, NY 10018."

**Allulose Is a Sugar**

43. Allulose is a sugar. Chemically, allulose is a monosaccharide — the C-3 epimer of D-fructose — meaning that allulose and fructose share the same molecular formula and connectivity and differ only in the spatial orientation of a hydroxyl group at the third carbon.[8]

44. Allulose is not merely a sugar as a matter of chemical classification; it is used as one. Allulose has roughly 70% of the sweetness of table sugar and is used in gram-scale quantities as a bulk sweetener and as a partial replacement for added sugars.[9] That is why each serving of the Products contains several grams of it, unlike high-intensity sweeteners that are used in trace amounts.

45. Allulose also behaves like sugar in food, with solubility, water activity, and viscosity similar to fructose.[10] It is widely regarded as a substitute for table sugar — a substitute that is itself a sugar.

**Allulose Is a "Sugar" Under the Governing Federal and Florida Standards**

[8] Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes, 8 Foods art. 448, at 1-2 (2019), https://doi.org/10.3390/foods8100448; Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults, 10 Nutrients art. 2010, at 1-2 (2018), https://doi.org/10.3390/nu10122010.

[9] *See* Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 Nutrients 2010, at 2 (2018) (allulose "maintains approximately 70% of sweetness relative to sugar"); Han-Joo Maeng et al., *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 Foods 448, at 2 (2019) ("D-allulose has 70% of the sweetness of sucrose")

[10] *See* Han, *supra*, at 10 (allulose's "chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity").

46. Congress authorized the U.S. Food and Drug Administration ("FDA") to regulate food labeling under the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 *et seq.* FDA promulgated the relevant regulations at 21 C.F.R. part 101.

47. The "Zero G Added Sugar" statement is a nutrient content claim because it expressly characterizes the level of sugar in the Products. *See* 21 C.F.R. § 101.13(b). Such claims may be made only in accordance with FDA's regulations.

48. Section 101.60(c)(2) governs "no added sugar," "without added sugar," and "Zero G Added Sugar" claims. It provides that such terms may not be used unless, among other requirements, "[n]o sugar or sugar-containing ingredient is added during processing." 21 C.F.R. § 101.60(c)(2)(i).

49. To measure sugars, § 101.9(c)(6)(ii) defines "Total Sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)," and § 101.9(c)(6)(iii) defines "Added sugars" to include sugars "added during the processing of foods." Allulose, a free monosaccharide added during processing, falls squarely within both definitions.

50. The FDA has repeatedly confirmed that allulose is a sugar under this definition. In its 2016 rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would exclude it. *See* 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016). The definition turns on chemical structure — "the number of saccharide units" — not on

physiological effects such as caloric value or glycemic response. *See* 58 Fed. Reg. 2,079, 2,098 (Jan. 6, 1993).

51. The United States has recently reaffirmed this position. In an amicus brief filed at the invitation of the U.S. Court of Appeals for the Seventh Circuit in a materially identical allulose case, the Government stated that "allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)" and that the phrase "all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)" is inclusive and illustrative, not restrictive.[11]

**The "Zero G Added Sugar" Claim Is Prohibited, Not Permitted, by Federal Law**

52. Because allulose is a sugar ingredient that Defendants added to the Products during processing, the Products cannot lawfully bear a "no added sugar," "without added sugar," or "Zero G Added Sugar" claim. See 21 C.F.R. § 101.60(c)(2)(i). That provision, by its terms, does not turn on the quantity of sugar added — unlike the "sugar free" standard of § 101.60(c)(1) — but on the simple fact that a sugar-containing ingredient was added at all.

53. The Products' "Includes 0g Added Sugars" Nutrition Facts declarations compound the violation. "Added sugars" are defined to include sugars "added during the processing of foods," including free monosaccharides. 21 C.F.R. § 101.9(c)(6)(iii).

[11] Brief for the United States as Amicus Curiae at 2, 11-24, Franco v. Chobani, LLC, No. 25-2087 (7th Cir. June 29, 2026) ("allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)").

Allulose falls within that definition, and Defendants' "0g Added Sugars" declaration understates the Products' added-sugar content by several grams per serving.

54. In October 2020, FDA issued guidance stating it would exercise enforcement discretion as to the quantity of allulose reflected in the Total Sugars and Added Sugars lines of the Nutrition Facts panel, and as to the caloric value assigned to allulose, pending further rulemaking. FDA, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* (Oct. 2020) ("2020 Allulose Guidance").

55. Accordingly, no federal or state law required or specifically permitted Defendants to represent the Products as having "Zero G Added Sugar." Plaintiff does not seek to impose any requirement different from, or in addition to, federal law; she seeks to enforce labeling requirements identical to the federal standards that Florida has adopted. *See* 21 U.S.C. § 343-1(a)(5).

**<u>The Products Are Misbranded Under Florida Law</u>**

56. Florida has adopted the federal food-labeling requirements as state law. Under the Florida Food Act, Chapter 500, Florida Statutes, the Florida Department of Agriculture and Consumer Services has adopted the federal food regulations at 21 C.F.R. Part 101 by reference, expressly incorporating them "as rules under the Florida Food Act, Chapter 500, F.S." Fla. Admin. Code R. 5K-4.002(1)(d). The nutrient content claim regulation (§ 101.60), the sugars definition (§ 101.9(c)(6)(ii)), and the nutrient content claim framework (§ 101.13) are therefore Florida law.

57. A food is misbranded under Florida law if its labeling is false or misleading in any particular. *See* § 500.11(1)(a), Fla. Stat. It is unlawful to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. *See* § 500.04, Fla. Stat.; *see also* 21 U.S.C. § 343(a)(1), (r)(1)(A).

58. The Products cannot lawfully bear the "Zero G Added Sugar" Representation because allulose, a sugar, is added to the Products during processing. 21 C.F.R. § 101.60(c)(2)(i). The Products' Nutrition Facts panels independently misstate the Products' added-sugar content for the same reason. 21 C.F.R. § 101.9(c)(6)(iii).

59. On either ground, the Products are misbranded under Florida and federal law, and Defendants' advertising, distribution, and sale of the Products are unlawful.

**Reasonable Consumers Cannot Detect Defendants' Deception**

60. Reasonable consumers have no reason to look past the conspicuous "Zero G Added Sugar" claim on the front of the package. Consumers are not expected to look beyond a prominent front-label representation to discover that it is false, and are not required to perform independent scientific research into the chemical classification of listed ingredients.

61. Allulose is not a common household term. Reasonable consumers, including Plaintiff, are unlikely to recognize it or infer from the ingredient list that it is a sugar. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry.

62. Defendants' deception is compounded by the "Includes 0g Added Sugars" line in the Nutrition Facts panel, which reinforces the no-sugar-added message and makes it effectively impossible for a consumer to discover that the sugar was, in fact, added to the Products.

**Defendants Knew the Representations Were False and Plaintiff Was Injured**

63. Defendants knew, or should have known, that the Representation was false and misleading when they labeled, advertised, distributed, and sold the Products.

64. Defendants knew that the Products contain allulose, that allulose is a sugar, that their labels represented that the Products contained no sugar, that reasonable consumers would rely on those labels, and that the Representation enabled Defendants to charge a premium.

65. Defendants controlled, or participated in, making the Representation and could have stopped using it or ensured it was true. Despite their knowledge, Defendants continued to use the Representation, causing consumers to buy or overpay for the Products.

66. By deceiving consumers about the Products' nature and ingredients, Defendants took market share from truthful competitors and commanded a price premium, thereby increasing their profits.

67. When Plaintiff purchased the Products, she did so in reliance upon Defendants' Representation that the Products had "Zero G Added Sugar" and contained "0g" Total Added Sugars.

68. Had Plaintiff known that the Products contained sugar, she would not have purchased the Products, or would have paid less for them.

69. Plaintiff and the Classes paid a price premium — that is, they paid more than they otherwise would have, or purchased Products they would not have purchased at all, because of the "Zero G Added Sugar" Representation. Plaintiff and the Classes did not receive the benefit of their bargain because the Products contained allulose.

70. Plaintiff and the Classes suffered injury in fact and lost money as a direct and proximate result of Defendants' wrongful conduct.

71. Plaintiff remains interested in purchasing the Products if free of added sugar. She would purchase the Products again if she could rely on the "Zero G Added Sugar" Representation as truthful. Because she cannot determine whether the Representation has been or will be corrected, she is likely to be misled again absent injunctive relief.

72. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on the Representation in deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendants to cease or correct the misleading Representation can address that prospective harm.

## CLASS ACTION ALLEGATIONS

73. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the following Classes:

**The "National Class": All natural persons who, within the four (4) years preceding the filing of this Complaint, purchased any of the Products in the United States for personal use and not for resale.**

**The "Florida Class": All natural persons who, within the four (4) years preceding the filing of this Complaint, purchased any of the Products in the State of Florida for personal use and not for resale.**

74. Subject to information obtained through discovery, the Classes definitions may be amended or refined, including through the use of subclasses, and Plaintiff reserves the right to do so.

75. Excluded from the Classes are Defendants and their officers, directors, and employees; any entity in which Defendants have a controlling interest; the judge and magistrate judge assigned to this action and their staff and immediate families; and Plaintiff's counsel.

76. **Numerosity (Fed. R. Civ. P. 23(a)(1)).** Members of the Classes are so numerous that joinder is impracticable. Upon information and belief, the Classes include thousands of consumers. Their identities may be ascertained through Defendants' and retailers' records, and they may be notified by mail and/or publication.

77. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)).** Common questions of law and fact exist as to all Class members and predominate over any individual questions, including:

a. whether allulose is a sugar;

b. whether allulose was added to the Products during processing;

c. whether the Products were correctly represented as having "Zero G Added Sugar";

d. whether the Representations were false, misleading, or deceptive;

e. whether the Representations were material to a reasonable consumer;

f. whether the Products are misbranded under Florida and federal law;

g. whether Defendants' conduct constitutes an unfair or deceptive act or practice under FDUTPA;

h. whether Defendants' conduct violated § 817.41, Fla. Stat.;

i. whether Defendants were unjustly enriched;

j. whether Plaintiff and the Classes are entitled to damages, restitution, and injunctive relief, and the proper measure thereof.

78. **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiff's claims are typical of the Classes' claims. Plaintiff and the Classes were exposed to the same uniform Representation, purchased the same Products, and suffered the same injury — payment of a price premium for Products that did not have Zero G Added Sugar.

79. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests antagonistic to the Classes and has retained counsel experienced in consumer class-action litigation who intend to prosecute this action vigorously.

80. **Superiority (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The claims arise from common, uniform conduct; the cost and burden of individual litigation make

individual redress impracticable given the modest value of each claim; and concentrating the claims in one forum avoids inconsistent judgments and conserves judicial resources.

81. **Rule 23(b)(2).** Defendants have acted on grounds generally applicable to the Classes by uniformly labeling and marketing the Products as having "Zero G Added Sugar," making final injunctive and corresponding declaratory relief appropriate for the Classes as a whole.

82. All conditions precedent to this action have been performed, satisfied, waived, or excused.

**COUNT I**
**DEFENDANTS' VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, § 501.201 *ET SEQ.*, FLA. STAT.**
***(On Behalf of the Florida Class)***

83. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 82 as if fully set forth herein.

84. The Products are tangible goods with value, which Defendants advertised, offered, distributed, and sold in Florida.

85. Defendants engaged in "trade or commerce" within Florida as defined by § 501.203(8), Fla. Stat.

86. Section 501.204(1), Fla. Stat., prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The standard is objective: whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.

87. Defendants committed unfair and deceptive acts by representing that the Products have "Zero G Added Sugar" when each serving contains four to five grams of allulose, a sugar. The Representation was likely to deceive, and did deceive, reasonable consumers.

88. Defendants' conduct is also a per se violation of FDUTPA because it violates the misbranding provisions of §§ 500.04 and 500.11(1)(a), (n), Fla. Stat., which adopt the federal food-labeling requirements of 21 U.S.C. § 343 and 21 C.F.R. §§ 101.13 and 101.60(c)(2).

89. No federal or state law required or specifically permitted Defendants to label the Products "Zero G Added Sugar." To the contrary, that labeling is prohibited by 21 C.F.R. § 101.60(c)(2)(i). The safe harbor in § 501.212(1), Fla. Stat., therefore does not apply.

90. The Representation was material. A reasonable consumer would find it material to the decision whether to purchase the Products and how much to pay. The Representation, and the reasonable-consumer understanding of it, is uniform across the Products and the Florida Class.

91. Defendants' violations were willful and knowing.

92. As a direct and proximate result of Defendants' unfair and deceptive acts, Plaintiff and the Florida Class were injured and suffered actual damages. They paid a price premium for the Products — they paid more than they would have paid, or purchased Products they would not have purchased, because of the Representations.

93. Pursuant to § 501.211(2), Fla. Stat., Plaintiff and the Florida Class are entitled to recover actual damages, together with attorneys' fees and court costs under § 501.2105, Fla. Stat.

94. Pursuant to § 501.211(1), Fla. Stat., Plaintiff and the Florida Class are also entitled to declaratory and injunctive relief directing Defendants to cease the false and misleading labeling and advertising and to disseminate corrective disclosures.

**COUNT II**
**DEFENDANTS' VIOLATION OF § 817.41, FLA. STAT.**
**(FALSE AND MISLEADING ADVERTISING)**
***(On Behalf of the Florida Class)***

95. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 82 as if fully set forth herein.

96. Section 817.41(1), Fla. Stat., makes it unlawful to make or disseminate any "misleading advertisement." Defendants' "Zero G Added Sugar" Representation, disseminated on the Products' labels, is a misleading advertisement because it represents that no sugar was added to the Products when each Product is formulated with allulose, a sugar, added during processing.

97. Defendants made the Representation knowing it was false or misleading, or with reckless disregard for its truth, and with the intent that consumers, including Plaintiff and the Class, rely on it.

98. Plaintiff and the Class justifiably relied on the Representation to their detriment, purchasing the Products and paying a price premium they would not otherwise have paid.

99. As a direct and proximate result of Defendants' misleading advertising, Plaintiff and the Class suffered damages and are entitled to recover actual damages, and, where warranted, punitive damages, together with attorneys' fees and costs.

**COUNT III**
**UNJUST ENRICHMENT**
***(On Behalf of the National Class)***

100. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 82 as if fully set forth herein, and asserts this claim in the alternative to the extent any contract does not govern the subject matter of the dispute.

101. Plaintiff and the Class conferred a benefit on Defendants in the form of the monies they paid for the Products, the proceeds of which flowed to Defendants through their distribution and sale of the Products, including through retailers such as Walmart. Defendants would not have received those monies but for the "Zero G Added Sugar" Representation.

102. Defendants had knowledge of, and voluntarily accepted and retained, that benefit.

103. Defendants obtained the benefit through their deceptive Representation. A portion of what Plaintiff and the Class paid — the price premium attributable to the Representation — reflects value Defendants obtained but did not confer. Under these circumstances, it would be inequitable for Defendants to retain that benefit without paying its value.

104. Plaintiff and the Class are entitled to restitution and disgorgement of the monies, profits, and other benefits Defendants obtained from their wrongful conduct, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that this Court enter judgment against Defendants as follows:

a. Certifying this action as a class action under Rule 23, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;
b. Awarding actual damages as pled herein;
c. Awarding restitution and all other equitable monetary relief;
d. Granting injunctive and declaratory relief, including an order requiring Defendants to cease labeling, marketing, and selling the Products with the Representation and to make corrective disclosures;
e. Awarding pre-judgment and post-judgment interest as provided by law;
f. Awarding reasonable attorneys’ fees, litigation expenses, and costs of suit; and
g. Granting such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted on September 9, 2026 by,

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
BGeiger@seraphlegal.com
Service@seraphlegal.com
Tel: 813-321-2348
*Counsel for Plaintiff,*
*Christina Bauer*